## MUNOZ v. MERCHANTS' NAT. BANK OF ALLENTOWN.

### Civil Action No. 1729.

District Court, E. D. Pennsylvania.

April 2, 1943.

See, also, 2 F.R.D. 189.

Ivan Culbertson, of Wilmington, Del., for plaintiff.

Robert T. McCracken and C. Russell Phillips, both of Philadelphia, Pa., for defendant.

BARD, District Judge.

Defendant has filed a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C. A. following section 723c.

Plaintiff instituted an action for an account against the Merchants' National Bank of Allentown, as successor to Citizens' Deposit and Trust Company of Allentown, Pennsylvania. The complaint alleges that complainant is the daughter and only child of Mantinino Guacanagasi Munoz, who was one of three children of General Roque J. Munoz. The general, who was a citizen and resident of Honduras, was assassinated in 1892. Probate proceedings were had in Honduras and his three children were declared his sole heirs. It is averred that his estate consisted of a large tract of land in Honduras known as the Mata de Guineo plantation, several other specified parcels of real estate in Honduras, and a considerable amount of tangible and intangible personal property, and that the estate had a value of not less than $600,000. Mantinino Munoz left Honduras and moved to Allentown, Pennsylvania, where he died in 1914, shortly after the birth of the plaintiff. The Citizens' Deposit and Trust Company of Allentown, Pennsylvania, was thereupon appointed by the Orphans' Court of Northampton County to be the guardian of the estate of the plaintiff.

The complaint further alleges that the Citizens' had full knowledge that plaintiff was the sole heir of her father and that he had a one-third interest in the estate of General Munoz in Honduras, but that, despite such knowledge, it made no effort to preserve, recover, manage and collect rents.

and profits therefrom, and permitted this to be done by America B. Munoz, one of the other children of General Munoz and hence plaintiff's aunt. It is further alleged that in 1917 America B. Munoz came to Allentown and sought a general power of attorney to handle plaintiff's interest in the estate; that Citizens' resigned as guardian and plaintiff's mother was appointed as a successor guardian; and that upon the advice of Citizens' she executed a power of attorney to America. Within a month plaintiff's mother in turn resigned and Citizens' was again appointed guardian.

The complaint further alleges that America alienated and converted all of plaintiff's interests in the entire estate of General Munoz, which interest at the time was worth not less than $200,000, for $24,750. This sum was turned over to her by Citizens', of which the defendant subsequently became the successor. In 1935, after plaintiff had attained her majority, the defendant filed its final account in the Orphans' Court of Northampton County, which account was approved, and defendant was discharged as guardian. Plaintiff promptly went to Honduras, began an investigation of the estate of General Munoz, and in 1936 took legal proceedings there to have herself declared the sole heir of the estate of her father. As the result of her investigation, plaintiff avers, she discovered the facts alleged in her complaint. as to the nature and scope of General Munoz's estate and the allegedly illegal disposition thereof made by America B. Munoz.

Defendant filed an answer denying any knowledge on its part, or that of its predecessor, of the large estate of which plaintiff alleges that General Munoz died possessed, and denying that it made no efforts to protect her interest in his estate. It further denies that its predecessor advised, consented to, or even knew of the execution of a power of attorney by plaintiff's mother to America. It further denies that its predecessor permitted America to alienate and convert plaintiff's estate for less than its value, and alleges that it duly accounted to plaintiff for the funds turned over to it by America. The answer further sets forth that the question of defendant's liability for alleged misconduct was heard and determined by the Orphans' Court of Northampton County on plaintiff's exceptions to the defendant's account as guardian and that the matter is therefore res judicata.

Following the filing of its answer, defendant propounded to plaintiff a number of written interrogatories to which plaintiff duly filed answer. These are that America B. Munoz, with the approval of a court in Honduras, sold the Mata de Guineo plantation for $75,000 and accounted to the defendant's predecessor for plaintiff's one-third share thereof, and that after her majority plaintiff, by written instrument, duly ratified and affirmed this sale and conveyance. They further reveal that plaintiff's extensive investigation and search in Honduras uncovered no information whatsoever concerning the alleged disposition by America of any of the other real estate and personal property which plaintiff alleges was in the estate of General Munoz.

Upon this state of the record, defendant has filed a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure. In support of this motion defendant contends, first, that a guardian appointed in Pennsylvania has no power nor duty with respect to assets in Honduras; secondly, that the plaintiff is not entitled to go to trial on her allegations as to the illegal disposition by America, with knowledge of defendant's predecessor, of the various assets asserted to have constituted General Munoz's estate, in view of her answers to the interrogatories admitting that she had no knowledge nor information of the disposition of any of those assets except the Mata de Guineo plantation; and finally, that as to the sale of that plantation, plaintiff received her share of the proceeds and, after attaining majority, expressly ratified and affirmed it in writing.

In determining the validity of these contentions, it is necessary to ascertain the theory of plaintiff's action. There is considerable difficulty in doing this, especially in the absence of a brief on her behalf. Her apparent theory is that the Citizens', during the period in which it was guardian of her estate, knew of her interest in the estate of her grandfather in Honduras and knew that it was being managed and disposed of by America B. Munoz without any authority, but failed to take any steps to preserve the estate and prevent its illegal dissipation.

Defendant cites numerous authorities demonstrating that a guardian has no

power or authority to act in a jurisdiction other than that in which it was appointed, and argues therefrom that a guardian therefore has no duties with respect to foreign assets belonging to its ward. The question of power to act in a foreign jurisdiction, however, is a question merely of the extent of authority which a state or country can confer upon a fiduciary with respect to property beyond its borders. It in no way restricts the duties which the courts of that state or country can impose upon the fiduciary appointed by them and subject to their control. Accordingly, the fact that a guardian appointed in Pennsylvania has no authority as such to act outside Pennsylvania does not mean that it may wilfully disregard the dissipation of assets of its ward outside of Pennsylvania of which it has full knowledge and not take the necessary steps to have a local guardian appointed or otherwise preserve those assets. Indeed, the contrary has been recognized to be the rule in Pennsylvania in the closely analogous situation of an administrator. See Shinn's Estate, 166 Pa. 121, at page 129, 30 A. 1026, 1029, 45 Am. St.Rep. 656, where the Supreme Court stated: "In Potter v. Hiscox, 30 Conn. 508, a guardian had among his ward's assets the note of a citizen of another state. He made no effort to collect, because the debtor was not within the jurisdiction. The court surcharged him with it, saying, with persuasive reason, that the domiciliary guardian was bound to use reasonable care and diligence in endeavors to save his ward's estate. To hold that the representative of the personal estate within the domicile owes no duty whatever, either to creditors or next of kin, with reference to personalty outside the jurisdiction, is to invite neglect and consequent waste and dissipation of assets. That he has no standing as a suitor in a foreign jurisdiction does not alone fix the measure of his duty, nor has it ever been so regarded in practice. In thus holding we do not intimate that he must go into a foreign jurisdiction, and institute suits which could not be sustained, or offensively intermeddle with assets, so as to defy or disregard the jurisdiction of the courts of the situs. There are often many things he may do, many things he ought to do, which suggest themselves to the prudent business man, tending towards the preservation of the estate, and are neither obnoxious to the law nor antagonistic to the interests of foreign creditors."

■ Assuming, however, that the broad allegations of the complaint that Citizens' knowingly permitted and acquiesced in a dissipation of plaintiff's estate in Honduras would establish a breach of duty on its part as guardian of the plaintiff, defendant urges that the facts set forth in the complaint do not support such allegations and that plaintiff's answers to the interrogatories completely refute them. This argument has considerable force. It is unnecessary, nor is it good practice, to state evidentiary facts in the complaint, Simonin's Sons v. American Can Co., D.C., 30 F.Supp. 901; but when specific answers to interrogatories refute broad general allegations of a complaint, the former paint the picture which the court should view in disposing of a motion for summary judgment. Plaintiff alleges that defendant's predecessor knew that America B. Munoz was illegally managing and dissipating plaintiff's interest in the estate of General Munoz and that America disposed of plaintiff's entire interest therein, of a value of not less than $200,000, for $24,750. Yet the answers to the interrogatories disclose (1) that the $24,750 was the plaintiff's proportionate share of the proceeds of the sale of only the Mata de Guineo plantation, which is asserted to have been but a fractional part of General Munoz's estate, and (2) that plaintiff's extensive investigation in Honduras disclosed no information with respect to any disposition by America of the balance of the assets alleged to have comprised that estate. The sale of that plantation was made under the authority of the court in Honduras and was ratified by plaintiff after she attained her majority. Her share of the proceeds was accounted for by America and by the defendant.

■ The confusion in plaintiff's allegations and the inconsistency between her averments and her answers to the interrogatories cast considerable doubt on the good faith of her allegations. To compel a guardian, which has been duly discharged by the court which appointed it, to go to trial in an action for wilfully failing to preserve assets of its ward in another country, should require unequivocal averments in good faith of the facts alleged as a breach of duty, and unless plaintiff really has knowledge of some facts or information which supports her broad allegations, a trial is not warranted. Her answers to the interrogatories disclose she has no such

knowledge. Under all the pleadings, including the answers to the interrogatories, there appear to be no genuine issues as to material facts.

Judgment will be entered for the defendant on its motion.