Charlotte ARCADI, on behalf of herself and all other employees similarly situated; Leonard Abbot; Lillian Abbot; Paul R. Blake; Hazel S. Blance; Ruth Greco; Margaret Griffin; Linda Guyer; Larry G. Hollenbeck; Sandra L. Hollenbeck; Beverly Lamie; and Marjory P. Northrup, Plaintiffs–Appellants,

v.

NESTLE FOOD CORPORATION, Defendant–Appellee.

No. 1947, Docket 94–7187.

United States Court of Appeals, Second Circuit.

Argued June 21, 1994.

Decided Oct. 28, 1994.

Richard J. Tupper, Cornfield and Feldman, Chicago, IL, for plaintiffs-appellants.

Stanley S. Jaspan, Foley & Lardner, Milwaukee, WI (Bernard J. Bobber, Foley & Lardner, Milwaukee, WI, Nancy L. Pontius, MacKenzie Smith Lewis Michell & Hughes, Syracuse, NY, of counsel), for defendant-appellee.

Before: WINTER, MINER, and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff Charlotte Arcadi and other employees similarly situated appeal from Judge Scullin's grant of summary judgment in favor of defendant Nestle Food Corporation. The district court held that appellants have no right under the Fair Labor Standards Act ("FLSA") to be paid for time spent changing into and out of employer-provided uniforms. We affirm.

Nestle produces chocolate products in a manufacturing facility in Fulton, New York. Over 800 production and maintenance employees at the Fulton facility are represented by Local 1974 of the Retail, Wholesale & Department Store Union, AFL–CIO ("Local 1974"), while approximately 19 laboratory employees are represented by Local 1975 of the Retail, Wholesale & Department Store Union, AFL–CIO ("Local 1975") (collectively, "unions"). Since 1942, the unions and their predecessors have negotiated a series of collective bargaining agreements with Nestle. The collective bargaining agreements pertinent to this dispute were effective from May 1990 to May 1993. Negotiations over those agreements commenced in March 1990. Prior to these negotiations, Nestle had a voluntary uniform program in which approximately 180 employees participated.

During the 1990 negotiations, Nestle raised the issue of a switch from the voluntary uniform program to a mandatory uniform policy. In response, the unions proposed, *inter alia,* that employees be compensated at an overtime wage rate for time spent changing into and out of the uniforms. Nestle insisted that the time spent changing into and out of the uniforms not be compensable. The union negotiators dropped their demand for this compensation, and the collective bargaining agreements contained no reference to such compensation. However, the union negotiators understood that Nestle did not intend to compensate employees for clothes-changing time.

Once the agreements took effect, Local 1974 filed a grievance over the pay-for-changing-time issue. Nestle rejected the grievance at the first step of the grievance procedure. Local 1974 appealed this denial through the third step of the grievance process, taking the position that, although it had tacitly acquiesced to Nestle's demand that employees change clothes on their own time, the policy violated the FLSA. At this third step, Nestle once again rejected the grievance. Under the terms of the relevant collective bargaining agreement, if arbitration is not requested within 45 days of Nestle's written third step response, the grievance is deemed "settled." Local 1974 did not request arbitration.

On March 31, 1992, appellants brought the instant action against Nestle. They alleged that Nestle had violated the FLSA by not compensating the employees at an overtime rate for changing time. Nestle asserted that Section 3(*o*) of the FLSA, 29 U.S.C. § 203(*o*) excluded the time employees spent changing clothes from compensable hours because a "custom or practice" to that effect existed under an operative collective bargaining agreement. Following discovery, Nestle moved for summary judgment.

The district court held that Section 3(*o*) of the FLSA applied to the hours in question. Judge Scullin's opinion relied on two facts. First, the Nestle plant had a history of "non-compensation" at the Fulton plant with respect to changing time under the voluntary uniform program. Second, all parties had

agreed and knew that there would be no payment for such hours under the negotiated agreements. *See Arcadi v. Nestle Foods Corp.,* 841 F.Supp. 477, 483 (N.D.N.Y.1994). He granted summary judgment dismissing the action, and this appeal followed.

■ Because this is an appeal from a grant of summary judgment, we review the record *de novo,* viewing the evidence in the light most favorable to the party opposing summary judgment. *See, e.g., Dube v. State Univ. of New York,* 900 F.2d 587, 597 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).

Sections 206 and 207 of Title 29 provide for minimum and overtime wages for employees. 29 U.S.C. §§ 206, 207. Section 203(*o*) creates an exclusion from compensable working time that provides:

> In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(*o*).

Section 203(*o*) thus excludes changing time if there exist "express terms" within the agreement or a "custom" or "practice" under it. The agreements in the instant case contained no "express terms" regarding the compensation due for time spent changing clothes. However, the provision of a wage scale for working times and the absence of a provision for compensating changing time implies that the latter is not compensable. The question at issue, therefore, is whether that implication and the union's acquiescence in it is a "custom or practice" for purposes of Section 203(*o*).

■ As noted, the district court found Nestle's past "practice of non-compensation" for changing time probative, even though this practice involved a voluntary uniform program. In that regard, the district court relied upon *Saunders v. John Morrell & Co.,*

No. C88–4143, 1991 WL 529542, at *4 (N.D.Iowa Dec. 24, 1991) (workers not paid for clothes-changing during previous five years showed custom or practice existed to exclude time), and *Williams v. W.R. Grace & Co.,* 247 F.Supp. 433, 435 (E.D.Tenn.1965) ("custom and practice were followed exempting clothes-changing and washing time from wage-payment"). However, we give more weight to the distinguishing feature of the voluntariness of the previous program than did the district court. In our view, the shift from a voluntary uniform program to an involuntary uniform policy largely vitiates the precedential effect of Nestle's prior policy of non-compensation for clothes-changing.

■ As a definitional matter, "custom" suggests an ongoing understanding with some continuity. Because the mandatory uniform policy is new, we believe that there was no pertinent "custom." However, we believe there was such a "practice" grounded in the parties' understanding resulting from the 1990 negotiations. Unlike "custom," "practice" can include understandings with regard to the future agreed to by the parties. Whereas a custom suggests an ongoing, even if recent, course of conduct, there may be a new practice that looks only to the future. The 1990 negotiations led to such a practice. The issue of compensation for clothes-changing time was discussed during the negotiations, and the unions understood and accepted Nestle's position. Indeed, Local 1974's failure to request arbitration "settled" the "practice" under its collective agreement. We believe, moreover, that Local 1975's understanding that changing time was not compensable under its agreement with Nestle is a "practice" for purposes of Section 203(*o*).

Unwritten agreements concerning changing time have been held to constitute a "practice" under a collective bargaining agreement. In *Saunders,* the court found that the deletion of a previously existing provision compensating changing time represented a "clear and unambiguous expression" of mutual intent to "eliminate clothes-changing as a separate compensable event." *Saunders,* 1991 WL 529542 at *3. *Nardone v. General Motors,* 207 F.Supp. 336 (D.N.J.1962), held that a policy of non-compensation for chang-

ing time existed because "the collective bargaining agreement negotiations encompassed" the issue, and there was no showing "that the negotiations entered into were other than on equal basis." *Id.* at 340; *see also Hoover v. Wyandotte Chems. Corp.,* 455 F.2d 387, 389 (5th Cir.) (holding that abandonment of demand for 23–25 paid clothes-changing/showering minutes constituted union acquiescence to employer's long-standing 15 minute policy), *cert. denied,* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972).

■ We agree with those decisions. If the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, then a "practice" exists, even in the absence of express written terms.

We therefore hold that there was a practice under Nestle's collective bargaining agreements denying pay for changing-time at Nestle's Fulton facility. Section 203(*o*) of Title 29 thus excludes this time from the ambit of 29 U.S.C. Sections 206 and 207.

The judgment of the district court is affirmed.